**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

TERRESIA G.,

                Plaintiff,

        v.                                          No. 5:17-CV-538 (CFH)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Olinsky Law Group<br>300 S. State Street<br>Suite 420<br>Syracuse, New York 13202<br>Attorney for Plaintiff | HOWARD D. OLINKSY, ESQ. |
| Social Security Administration<br>Office of Regional General Counsel,<br>Region II<br>26 Federal Plaza, Rm. 3904<br>New York, New York 10278<br>Attorney for Defendant | PRASHANT TAMASKAR, ESQ.<br>Special Assistant U.S. Attorney |

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Terresia G. brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her

application for disability insurance benefits. Dkt. No. 1 ("Compl.").[1] Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for judgment on the pleadings. Dkt. Nos. 9, 10. For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff completed two years of high school. T. 561.[2] Plaintiff previously worked as a production weigher, custom service clerk, and billing clerk. Id. at 48-56. Plaintiff has a history of post-cerebral vascular accident and/or stroke that left her with weakness on the left side of her body. Id. at 298-305. On January 29, 2012, plaintiff arrived at the Cortland Regional Medical Center emergency room with complaints of unsteadiness on her feet, sudden onset of a droop to her face, and drooling. Id. at 298-99. On examination, plaintiff had difficulty raising her left arm, and weakness in her left arm and the left side of her face. See id. at 289-300. Plaintiff had a "slow deliberate gait." Id. at 300.

On April 10, 2013, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. T. 20. Plaintiff alleged disability beginning on January 23, 2012. Id. Plaintiff's application was initially denied on July 31, 2013. Id. at 102-07. Plaintiff requested a hearing, and a hearing was held on October 13, 2013 before Administrative Law

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 5.

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

2

Judge ("ALJ") F. Patrick Flanagan. Id. at 41-90, 108. ALJ Flanagan determined that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from January 23, 2012, through the date of this decision." Id. at 21. The Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. Id. at 1-3. Plaintiff commenced this action on May 16, 2017. See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be

3

affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037)

(2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progress to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff met the insured status requirements of the Social Security Act through September 30, 2018. T. 22. The ALJ found that while plaintiff had engaged in significant work activity after the alleged onset date of January 23, 2012, the record did not clearly establish that plaintiff had engaged in substantial gainful activity. Id. The ALJ indicated that plaintiff had "not submitted sufficient evidence to show she did not engage in [substantial gainful activity] after her alleged onset date and has [ ] failed to meet her burden of proof[.]" Id. at 23. The ALJ determined that this issue "would not alter the outcome of this case." Id. The ALJ found at step two that, during the period in question, plaintiff had the severe impairments of "status post cerebral vascular accident with mild left hemiparesis, borderline intellectual functioning, cervical and lumbar degenerative disc disease, left shoulder osteoarthritis, asthma, and chronic obstructive pulmonary disease." Id. at 23. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 25. Before reaching step four, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to

> lift and carry a maximum of 20 pounds occasionally and ten pounds frequently. However, with her non-dominant left upper extremity, the [plaintiff] can only lift, carry, push and pull up to ten pounds occasionally. She can stand a total of approximately six hours out of an eight-hour workday, walk approximately four hours out of an eight-hour workday, and sit approximately six hours out of an eight-hour workday. She can occasionally climb stairs or ramps, but should never climb ladders, ropes or scaffolds. She can occasionally reach with her non-dominant left upper extremity, but has no limitations for reaching with her right upper extremity. She also has no limitations for handling, fingering and feeling

6

> bilaterally. She should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc. Mentally, the claimant has the ability to understand, remember and carry out simple instructions and tasks, maintain attention and concentration for simple tasks, make judgments involving simple matters, and respond appropriately to supervision, coworkers, usual work situations, and changes in a routine work setting.

Id. at 28. At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. Id. at 33. At step five, relying on the testimony of a vocational expert and considering plaintiff's age; education; work experience; and residual functional capacity, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Id. at 33-34. Thus, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from January 23, 2012, through the date of this decision." Id. at 34.

### D. Relevant Medical Evidence

### 1. Dr. Richard Weiskopf

Dr. Richard Weiskopf performed a consultative neurological examination on plaintiff on July 10, 2015. T. 549-53. Plaintiff's chief "complaints status post[-cerebral vascular accident] for left foot drop, frozen shoulder, and left-sided weakness." Id. at 549. Plaintiff reported that she had a stroke in January 2012. Id. Following the stroke, she spent a week in the hospital and a week in a rehabilitation facility. Id. Plaintiff reported that she completed some physical therapy exercises at home. Id.

Plaintiff advised Dr. Weiskopf that she has long standing asthma and in the past eight years a diagnosis of chronic obstructive pulmonary disease ("COPD"). T. 549. Plaintiff stated

7

that she was very short of breath on exertion, and att the time of the examination, she was smoking one half to three-quarters of a pack of cigarettes per day. Id. at 549-50. She has repeatedly tried to quit smoking without success. Id. at 550.

Plaintiff, who is right-handed, advised Dr. Weiskopf that as a result of her left side weakness and frozen shoulder, she is unable to do any typing with her left hand and cannot lift things with her left hand. T. 549. She stated that if she walks for any length of time, she experiences dragging of her left foot. Id. Plaintiff reported a loss of memory, which makes it difficult for her to hold a job as she makes too many mistakes. Id. Plaintiff stated that she had chronic back pain for about ten years, which is exacerbated by prolonged walking. Id. The back pain is in the central lumbar region and radiates down her right leg. Id. Plaintiff advised that she is able to perform activities of daily living including cooking, cleaning, laundry and shopping. Id. at 551. Plaintiff showers, bathes, and dresses herself. Id.

On his examination, Dr. Weiskopf noted that plaintiff had a normal gait. T. 551. She could stand on her heels and toes, but could not walk on them. Id. Plaintiff was able to rise from a chair without difficulty, and did not require an assistive device to ambulate. Id. Her hand and finger dexterity was intact. Id. Plaintiff's muscle tone in her lower extremities was normal. Id. at 552. Plaintiff did not appear to be in acute distress. Id.

Dr. Weiskopf diagnosed plaintiff with (1) status post cerebrovascular accident with left-sided weakness and frozen shoulder; (2) chronic low back pain; (3) asthma and obstructive pulmonary disease; and (4) chronic anxiety and depression. T. 552. Dr. Weikopf found that plaintiff had "no limitation on sitting, mild limitation on standing and walking, mild limitation on bending[;] lifting, and moderate limitation on climbing and carrying." Id. Plaintiff maintained

8

good use of her hands with regard to her fine motor activities, but Dr. Weiskopf acknowledged that she had a "slight decreased grip of her left hand." Id.

On July 10, 2015, Dr. Weiskopf completed a worksheet entitled "Medical Source Statement of Ability To Do Work-Related Activities." T. 554-60. Dr. Weiskopf indicated plaintiff could occasionally lift up to ten pounds; occasionally carry up to ten pounds; sit for two hours at a time without interruption; stand for one hour at a time without interruption; walk a half hour at a time without interruption; sit for five hours during an eight hour workday; stand for two hours during an eight hour workday; and walk for one hour during an eight hour workday. Id. at 554-55. Dr. Weiskopf further indicated that plaintiff could occasionally reach overhead with her right hand; occasionally reach with her right hand; frequently handle, finger, feel, and push/pull with her right hand; never reach overhead with her left hand; never reach with her left hand; frequently handle, finger, and feel with her left hand; and occasionally push/pull with her left hand. Id. at 555. Dr. Weiskopf noted that plaintiff could occasional climb stairs and ramps; never climb ladders or scaffolds; never balance; occasionally stoop; occasionally kneel; occasionally crouch; and never craw. Id. at 557. Moreover, plaintiff could never tolerate unprotected heights, moving mechanical parts, dust; odors; fumes; and pulmonary irritants, extreme cold, and extreme heat; and occasionally tolerate operating a motor vehicle, humidity and wetness, and vibrations. Id. at 558. In response to a question asking to identify the particular medical or clinical findings that support his assessment or limitations, Dr. Weiskopf wrote "see report." Id. at 554, 555, 556, 557, 558.

9

### 2. Dr. Kalyani Ganesh

Dr. Kalyani Ganesh, a specialist in internal medicine, performed a consultative examination of plaintiff on July 3, 2013. T. 378-383. On examination, Dr. Ganesh noted that plaintiff did not appear to be in acute distress. Id. at 379. Dr. Ganesh indicated that plaintiff walked with a limp or "somewhat dragging of the left foot." Id. Plaintiff could walk on her toes, but could not walk on her heels. Id. Dr. Ganesh assessed plaintiff's ability to squat at 50%, and her stance was normal. Id. She used no assistive devices, and needed no help changing for the exam or getting on or off the exam table. Id. She was able to rise from her chair without difficulty. Id. Dr. Ganesh noted that plaintiff's cervical spine and lumbar spine showed "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." Id. at 380. Dr. Ganesh determined that plaintiff had full range of motion of the right shoulder; elbows; and wrists, and limited range of motion of the left shoulder. Id. at 380-81.

Dr. Ganesh diagnosed plaintiff with (1) cerebral vascular accident with left-sided weakness; (2) asthma and chronic obstructive pulmonary disease; and (3) frozen left shoulder. T. 381. Dr. Ganesh found that plaintiff had no limitation sitting or standing, and mild limitation walking, climbing, lifting, carrying, pushing, and pulling with the left upper extremity. Id. at 381. She noted that plaintiff could use her hands freely. Id.

### 3. Dr. Jagadish Malakar

On March 13, 2015 Dr. Malakar completed a worksheet entitled "Medical Source Statement." T. 441-45. Dr. Malakar diagnosed plaintiff with "CVA with left hemiparesis," and left side weakness. Id. at 441. Dr. Malakar described plaintiff's prognosis as "guarded." Id.

10

As a result of the cerebral vascular accident, plaintiff exhibited signs of confusion, problems concentrating, memory issues, fatigue, depression, and feeling anxious. Id. Plaintiff also had difficulty with memory, reasoning, problem-solving, judgment, staying on task, and speed of mental processing, as well as inability to organize thoughts, trouble following conversations, beginning or completing tasks, and difficulty with self-control. Id. at 441-42.

Dr. Malakar found that plaintiff could sit for two hours at one time, and stand for forty-five minutes at one time. T. 442. He also found that plaintiff could sit and stand/walk for about two hours in a total eight-hour work day. Id. Dr. Malakar opined that plaintiff would need to take unscheduled breaks during the eight-hour workday every thirty minutes. Id. Dr. Malakar determined that plaintiff could never use her hands to grasp, turn or twist objects and could never use her fingers for fine manipulations. Id. at 443. Plaintiff could rarely reach her arms overhead or carry less than ten pounds. Id. Plaintiff would be off task more than twenty percent of the time during an eight hour workday and would be absent from work about three times a month. Id. at 444.

### E. Arguments

Plaintiff argues that the ALJ committed reversible error insofar as he: (1) improperly failed to weigh the opinion of consultative examiner Dr. Richard Weiskopf such that the RFC determination is not supported by substantial evidence; and (2) failed to fully and fairly develop the record. See generally Dkt. No. 9. The Commissioner argues that (1) the ALJ properly weighed Dr. Weiskopf's opinion; and (2) that substantial evidence supports the ALJ's finding that plaintiff was not disabled. See generally Dkt. No. 10.

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. "[T]he ALJ must consider all of the relevant medical and other evidence in the case record to assess the [plaintiff's] ability to meet the physical, mental, sensory and other requirements of work." Domm v. Colvin, No. 12-CV-6640T, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013). Moreover, "[i]t is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole." Id. (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.")).

### 1. Substantial Evidence

The Court agrees with the Commissioner that the ALJ's RFC determination, and his determination that plaintiff is not disabled, are supported by substantial evidence in the record. The ALJ gave "considerable weight" to Dr. Weiskopf's opinion based upon his July 10, 2015 consultative examination of plaintiff. T. 30. Dr. Weiskopf found that plaintiff was able to perform all of the activities of daily living. Id. at 551. Plaintiff could stand, but not walk, on her heels and toes. Id. Plaintiff's gait was normal, and she could walk without an assistive device. Id. She was able to get on and off the examination table without assistance. Id.

Dr. Weiskopf found plaintiff's hand and finger dexterity intact. T. 551. Plaintiff had grip

12

strength 5/5 bilaterally, and 5/5 strength in the proximal and distal muscles of her upper extremities. Id. at 551-52. In her lower extremities plaintiff has 5/5 strength in her right proximal muscles, and 4/5 strength in the left proximal muscles. Id. at 552. Dr. Weiskopf did not find any muscle atrophy. Id. Based on his examination, Dr. Weiskopf opined that plaintiff has no limitations in sitting with a mild limitations on standing and walking. Id. Plaintiff has a moderate limitation on climbing and carrying with a slightly decreased grip of the left hand. Id.

Dr. Weiskopf's opinion is consistent with the opinion of Dr. Ganesh who performed a consultative examination of plaintiff on July 3, 2013. T. 378. The ALJ gave Dr. Ganesh's opinion "significant weight," as it was consistent with other objective medical findings contained in the record. Id. at 30. When Dr. Ganesh examined plaintiff, she was not in acute distress. Id. at 379. Plaintiff relayed to Dr. Ganesh that she was able to perform all of her activities of daily living. Id. While plaintiff walked with a limp, she did not use an assistive device while walking. Id. Plaintiff was able to get off and on the exam table without assistance and rise from a chair without difficulty. Id.

On examination, Dr. Ganesh found that plaintiff had full range of motion of her lumbar and cervical spine. T. 380. She also had full range of motion in her hips, knees and ankles. Id. Plaintiff's strength on her right upper extremity was 5/5 while the strength in her lower upper extremity was 3-5/5. Id. Plaintiff's grip strength was 5/5 bilaterally in her hands and her finger dexterity was intact. Id.

Dr. Ganesh, like Dr. Weiskopf, opined that plaintiff has no limitation for sitting or standing. T. 381. She has a mild limitation with walking and climbing. Id. Plaintiff also had a mild limitations for lifting, carrying, pushing and pulling with her left upper extremity. Id. Plaintiff

13

was also able to use her hands freely. Id.

Dr. Weiskopf also completed a Medical Source Statement dated July 10, 2015, wherein he gave the plaintiff far greater limitations than those set forth in his narrative report. T. 554-59. In the Medical Source Statement, Dr. Weiskopf checked boxes indicating that plaintiff can sit for five hours, stand for two hours, and walk for one hour during an eight hour workday. Id. at 555. He also indicated that plaintiff can only occasionally reach with his right hand, and never reach overhead or otherwise with her left hand. Id. at 556. In completing the Medical Source Statement, Dr. Weiskopf repeatedly wrote "see report." Id. at 554-59. In his July 10, 2015 narrative report, based upon his examination the plaintiff, Dr. Weiskopf noted that plaintiff had no limitations on sitting and moderate limitations on standing and walking. Id. at 551.

"Given the inconsistency with his examination findings and the assessment he included in his exam narrative, as well [as] the lack of explanation for the greater limitations," the ALJ afforded Dr. Weiskopf separate assessment "little weight." T. 31. The ALJ specifically noted that in the Medical Source Statement, Dr. Weiskopf indicated that plaintiff can only occasionally reach with his right hand despite the absence of any evidence that plaintiff has any medical impairment associated with his right extremity. Id. The ALJ also noted the lack of any explanation by Dr. Weiskopf for the greater limitations set forth in the medical source statement. Id.

Dr. Jagadish Malakar completed a medical source statement. T. 441-45. Dr. Malakar indicated that since January 2012, plaintiff could never use her hands to grasp, turn or twist objects, and never use her fingers for fine manipulations. Id. at 443. He noted that she could rarely lift carry less than ten pounds. Id. During an eight hour workday, plaintiff could only sit

14

for a total two hours and stand/walk a total of two hours. Id. Plaintiff would need an unscheduled fifteen minute break every thirty minutes. Id. at 442. Dr. Malakar opined that plaintiff would be off task more than twenty percent of the time in an eight hour workday, and would be absent about three days a month. Id. at 444.

The ALJ found Dr. Malakar's "assessment wholly unsupported by the record." T. 32. The ALJ determined that Dr. Malakar's opinions were "inconsistent with [plaintiff's] physical and mental examinations and other medical opinions of record." Id. The ALJ found Dr. Malakar's opinions were also inconsistent many of the plaintiff's reported activities and abilities. Id. Moreover, at the hearing, plaintiff acknowledged that many of Dr. Malakar's opinions were based upon information which she provided to him. Id. The ALJ gave Dr .Malakar's opinions little to no weight. Id.

Plaintiff contends that the ALJ erred in failing to address the additional limitations set forth in Dr. Weiskopf's medical source statement. Dkt. No. 9 at 13. Plaintiff further contends that the RFC is not supported by substantial evidence. Id. The Court disagrees. As stated, it is the province of the ALJ to resolve conflicts in the medical evidence in the record. See Domm, 2013 WL 4647643, at *8. The ALJ need not "reconcile explicitly every conflicting shred of medical testimony." Galotti v. Astrue, 266 F. App'x 66, 66 (2d Cir. 2008) (summary order) (citing Fiorello v. Heckler, 725 F.2d 174,176 (2d Cir. 1983) (quotation marks omitted)). Further, an ALJ does not have to adhere to the entirety of the medical source's opinion in formulating a plaintiff's RFC. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence

available to make an RFC finding that was consistent with the record as a whole."); Zongos v. Colvin, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a physician's opinion but not to another portion). Moreover, "[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." Schlichting v. Astrue, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2)).

Here, the opinions of consultative examiners Dr. Weiskopf and Dr. Ganesh constitute substantial evidence in the record which supports the ALJ's RFC. As such, remand is not required on this basis.

### 2. Developing The Record

Given the non-adversarial nature of Social Security proceedings, and the remedial intent of the Social Security statute, an ALJ is under an affirmative duty to develop the medical record if it is incomplete. See Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)). An ALJ may recontact medical sources "if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled." Quinn v. Colvin, 199 F. Supp. 3d 692, 706 (W.D.N.Y. 2016) (quoting Batista v. Barnhart, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) (internal quotations omitted)). Where the ALJ already possesses a complete medical history and there are no obvious gaps in the record, the ALJ is under no obligation to seek additional

16

information. See <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir.1999) (citing <u>Perez v. Chater</u>, 77 F.3d 41, 48 (2d Cir. 1996)).

Plaintiff contends that in view of the conflicting findings contained in Dr. Weiskopf's narrative report and his medical source statement, the ALJ committed reversible error in failing to contact Dr. Weiskopf to address this issue. <u>See</u> Dkt No. 9 at 16. The Court disagrees. Here, the ALJ had a detailed narrative report from Dr. Weiskopf based on his July 10, 2015 examination of plaintiff, wherein he set forth his findings. T. 549-53. Dr. Weiskopf's report included a medical history taken from plaintiff, his observations of the plaintiff during that examination, and his conclusions based upon his physical examination of the plaintiff. <u>See id.</u> The conclusions reached by Dr. Weiskopf are supported by other medical evidence in the record, particularly the narrative report of Dr. Ganesh. <u>See id.</u> at 378-82. Given the completeness of the medical record before the ALJ, he was under no obligation to contact Dr. Weiskopf seeking additional information.

Having reviewed the administrative transcript in the ALJ's findings, and for the reasons stated herein, the Court finds that the acting commissioners determination is supported by substantial evidence remand is not required.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff Terresia G.'s motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt.

17

No. 10) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 21, 2018
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge